**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
michael@gabriellilaw.com
2426 Eastchester Road, Suite 215
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSICA SCHOENROCK, individually and on behalf of other similarly situated individuals, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| DEMERT BRANDS, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

Plaintiff, Jessica Schoenrock ("Plaintiff"), a resident of New York, on behalf of herself and all others similarly situated, by and through her undersigned counsel, alleges the following based upon her own personal knowledge as to her own actions and her counsel's investigation, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. This is a class action lawsuit by Plaintiff, and others similarly situated, who purchased for normal household use Defendant's dry shampoo products that are defective because they contain benzene, and which were formulated, designed, manufactured, marketed, advertised, distributed and sold by Defendant.

2. Defendant distributes, markets, and sells to consumers across the United States, both in retail establishments and online, including in New York, certain dry shampoo products under the name "Not Your Mother's" (the "Products"). The Products, including the ones identified below, are adulterated and/or contaminated with benzene, a known human carcinogen.

3. Plaintiff and putative Class members each purchased, and they or their household members used, Not Your Mother's dry shampoo products -- the same types that were specifically identified by an

independent testing agency as exceeding the U.S. Food and Drug Administration's ("FDA") permissible levels of benzene in "cosmetics" and "over-the-counter drugs,"[1] as follows:

| 1 Brand | UPC | Lot | Description |
|---|---|---|---|
| Not Your Mother's | 688047130500 | 21090 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz |
| Not Your Mother's | 688047130098 | 21145 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130296 | 21070 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz |
| Not Your Mother's | 688047130975 | 20356 | Triple Threat Brunette Dry Shampoo - Hint of Brunette Tinted Powder - 7 oz |
| Not Your Mother's | 688047130296 | 21188 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz |
| Not Your Mother's | 688047130517 | 21141 | Plump for Joy Body Building Dry Shampoo - Orange Mango - 7 oz |
| Not Your Mother's | 688047130500 | 21124 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz |
| Not Your Mother's | 688047130500 | 21179 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz |
| Not Your Mother's | 688047130517 | 21181 | Plump for Joy Body Building Dry Shampoo - Orange Mango - 7 oz |
| Not Your Mother's | 688047130098 | 20280 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130500 | 21063 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz |
| | | | |

---

[1] *See* Valisure Citizen Petition on Benzene in Dry Shampoo Products ("Citizen Petition") at 13-17 (available at https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf) (last accessed December 9, 2022).

| Not Your Mother's | 688047130296 | 21009 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz |
| Not Your Mother's | 688047130951 | 20353 | Blonde Moment Dry Shampoo - Hint of Blonde Tinted Powder - 7 oz |
| Not Your Mother's | 688047132290 | 21194 | Clean Freak Refreshing Dry Shampoo - Original - 1.6 oz |
| Not Your Mother's | 688047130296 | 21195 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz |
| Not Your Mother's | 688047130098 | 21235 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130487 | 21232 | Clean Freak Tapioca Dry Shampoo - Warm Sugar - 7 oz |
| Not Your Mother's | 688047130098 | 21210 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130098 | 21277 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130098 | 21211 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz |
| Not Your Mother's | 688047130296 | 21317 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz u |
| Not Your Mother's | 688047130296 | 21221 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz |

4.      The Products are defective because they contain significant amounts of the chemical benzene, a known human carcinogen. Yet, despite the presence of benzene, Defendant represents that the Products are safe and effective for their intended use.

5.      The presence of benzene in Defendant's Products was not disclosed to consumers in the Products' labelling, advertising or otherwise, in violation of state and federal law. Plaintiff and the putative class suffered economic damages due to Defendant's misconduct (as set forth below) and seek injunctive relief and restitution for the full purchase price of the Products. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief.

Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Defendant, which conducts business throughout New York State and within this judicial district. Plaintiff's claims arise out of Defendant's conduct within the state of New York.

7. This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed class, any member of the class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that there are at least 100 members in the proposed class and that the matter in controversy is well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to Plaintiff's claims, including Defendant's dissemination of false and misleading information regarding the nature and/or quality of the Products, occurred within this District.

## PARTIES

9. Plaintiff, Jessica Schoenrock, resides in Queens County, New York, and has no intention of changing her residence. During the Class Period, Plaintiff purchased Defendant's Products on multiple occasions at a Target store located in Flushing, New York. Based on the false and misleading claims by Defendant, at the time of purchase, Plaintiff was unaware that Defendant's Products were adulterated with benzene. Plaintiff purchased Defendant's Products on the assumption that the labeling of Defendant's Products was accurate and that the products were unadulterated, safe, and effective. Plaintiff would not have purchased Defendant's Products had she known they contained benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

10. Defendant is a Florida limited liability company with its principal place of business located in Tampa, Florida. Defendant is a beauty products company that "creates and maintains over 125 products within

12 product lines."[2] Defendant launched the "Not Your Mother's" brand in 2008 and it "can now be found in over 25,000 stores nationwide . . . with 31 items and more continually in the works."[3]

## SUBSTANTIVE ALLEGATIONS

11. Upon information and belief, Defendant manufactures, markets, advertises, labels, distributes, and sells Not Your Mother's dry shampoo, including the Products.[4]

12. Dry shampoo products are considered cosmetics that are regulated by the FDA.[5]

13. On October 31, 2022, Valisure, an analytical pharmacy and consumer protection organization, petitioned the FDA to address dangerous levels of benzene in dry shampoos based upon rigorous testing the organization had conducted on a number of dry shampoo products.

14. Valisure found that certain dry shampoo products, including some of the Products, contain benzene, with values up to 158 parts per million ("ppm").[6]

15. In its Citizen Petition, Valisure shows data from the analysis of benzene by directly sampling contaminated air after spraying dry shampoo products, which suggests potential for short- and long-term inhalation exposure to high levels of benzene.[7] The presence of this known human carcinogen in dry shampoo products that are regularly used indoors and in large volumes makes this finding especially troubling.[8]

16. Benzene is used primarily in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years.

---

[2] https://www.demertbrands.com/about/ (last visited Dec. 9, 2022).

[3] *Id.*

[4] *Id.*; *see also* https://www.demertbrands.com/not-your-mothers-haircare/ (last visited Dec. 9, 2022).

[5] Citizen Petition at 1.

[6] *Id.* at 2, 13-17.

[7] *Id.*

[8] *Id.*

17. According to the National Toxicology Program ("NTP"), benzene is "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[9] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC").[10] Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[11] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on sufficient evidence of carcinogenicity in humans, sufficient evidence of carcinogenicity in experimental animals, and strong mechanistic evidence. . . . In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[12]

18. The Centers for Disease Control and Prevention ("CDC") notes that the Department of Health and Human Services has determined that benzene causes cancer in humans.[13] The World Health Organization ("WHO") and the IARC have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[14]

19. The FDA currently recognizes the high danger of this compound and lists it as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity. . . However, if their use is unavoidable in order to produce a drug product with a significant therapeutic advance, then their levels should be restricted" and benzene is restricted under such guidance to 2 ppm.[15]

---

[9] Benzene, Report on Carcinogens, Fourteenth Edition, DEPT. OF HEALTH AND HUMAN SERVICES (Nov. 3, 2016), https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf. (emphasis in original).

[10] Benzene, IARC Monographs On The Evaluation Of Carcinogenic Risks To Humans, Volume 120 (2018), https://publications.iarc.fr/_publications/media/download/6043/20a78ade14e86cf076c3981a9a094f45da6d27cc.pdf.

[11] Id.

[12] Id. (emphasis in original).

[13] Citizen Petition at 1 (citing Centers for Disease Control and Prevention, Facts About Benzene (2018) (https://emergency.cdc.gov/agent/benzene/basics/facts.asp)).

[14] Id. (citing International Agency for Research on Cancer and World Health Organization, IARC Monographs on the Identification of Carcinogenic Hazards to Humans (https://monographs.iarc.who.int/list-of-classifications)).

[15] Id. (citing Food and Drug Administration, Q3C – Tables and List Guidance for Industry (2018) (https://www.fda.gov/media/133650/download)).

20. The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "inhalation, skin absorption, ingestion, skin and/or eye contact" as exposure routes.[16]

21. The Environmental Protection Agency ("EPA") has estimated that lifetime exposure to benzene inhalation at 0.4 parts per billion ("ppb"), or 0.0004 ppm, will increase the risk of developing cancer in humans at the same 1 in 100,000 exposed persons rate as FDA uses to set regulatory limits on other trace impurities like N-nitrosamines.[17]

22. As previously stated, the subject Products are considered cosmetics, which the FDCA defines by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering the appearance[.]" Federal Food, Drug, and Cosmetic Act § 201(i). "Cosmetic companies have a legal responsibility for the safety of their products and ingredients."[18]

23. The Products are not drugs and contain no active pharmaceutical ingredient for therapeutic purposes. Thus, *any* amount of benzene is unacceptable and should not be employed in the manufacture of the Products.

24. Defendant's failure to control for benzene contamination and minimized notification of the importance and risks of benzene in its adulterated Products constitutes unfair and deceptive conduct.

25. Plaintiff and the Class were injured by the full purchase price of the Products because the Products are worthless, as they are adulterated and contain the known human carcinogen, benzene, and Defendant failed to warn consumers of this fact. Such illegally sold products are worthless and have no value.

26. Plaintiff and Class members bargained for a dry shampoo free of contaminants and dangerous substances and were deprived the basis of their bargain when Defendant sold them a product containing the carcinogen, benzene, which rendered the Products unmerchantable and unfit for use.

---

[16] *Id.* at 2 (citing 4 Centers for Disease Control and Prevention. The National Institute for Occupational Safety and Health (NIOSH), Benzene (October 30, 2019).

[17] *Id.* (citing Environmental Protection Agency. Benzene; CASRN 71-43-2. (https://iris.epa.gov/static/pdfs/0276_summary.pdf); Food and Drug Administration (February 2021). Control of Nitrosamine Impurities in Human Drugs. (https://www.fda.gov/media/141720/download).

[18] Cosmetic Safety Q&A: Personal Care Products (https://www.fda.gov/cosmetics/resources-consumers-cosmetics/cosmetics-safety-qa-personal-care-products#:~:text=Cosmetic%20companies%20have%20a%20legal,product%20affects%20how%20you%20look).

27. As the Products expose consumers to benzene, sometimes well above the legal limit for drugs (which the Products are not), the Products are not fit for use by humans. Plaintiff is further entitled to damages for the injury sustained in being exposed to high levels of acutely toxic benzene, damages related to Defendants' conduct, and injunctive relief.

28. The manufacture of any misbranded or adulterated cosmetic is prohibited under federal law[19] and New York state law.[20]

29. The introduction into commerce of any misbranded or adulterated cosmetic is similarly prohibited.[21]

30. The receipt in interstate commerce of any adulterated or misbranded cosmetic is also unlawful.[22]

31. Among the ways a cosmetic may be adulterated are:

> "If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health."[23]

32. A cosmetic is misbranded "[i]f its labeling is false or misleading in any particular."[24]

33. Defendant did not disclose that benzene, a known human carcinogen, is present in the Products purchased by Plaintiff and the putative class members. As a result of benzene contamination in the Products, they are considered adulterated and misbranded. The FDA instructs that there is no safe level of benzene, and thus it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity."[25]

---

[19] 21 U.S.C § 331(g).

[20] N.Y. GBL §§ 349 & 350.

[21] 21 U.S.C. §331(a).

[22] 21 U.S.C. §331(c).

[23] 21 U.S.C. §351(a)(2)(B).

[24] 21 U.S.C. §352(a)(1).

[25] FDA, Q3C–2017 Tables and List Guidance for Industry (dated June 2017, available at: https://www.fda.gov/media/71737/download).

34. Defendant wrongfully advertised and sold the Products without any labeling to indicate to consumers that these products contain benzene. In fact, while the labeling on the back of the bottle contains "Warnings," none of the warnings are for the presence of a carcinogenic ingredient.

35. Plaintiff has standing to represent members of the putative class because there is sufficient similarity between the specific Products purchased by the Plaintiff and the other Products not purchased by Plaintiff. Specifically, each and every one of Defendant's Products (i) are marketed in substantially the same way—as dry shampoo— and (ii) fail to include labeling indicating to consumers that the Products contain the known human carcinogen, benzene, at levels that are dangerous to human health when used as directed. Accordingly, the misleading effect of all of the Products' labels are substantially the same.

36. Had Plaintiff and members of the putative class known that any of the Products were contaminated with benzene, a known human carcinogen, they would not have purchased any of Defendant's Products. Thus, Plaintiff and members of the putative class have "lost money" by purchasing products they would not have otherwise purchased but for Defendant's misrepresentations and omissions. The decision to purchase or not purchase products that contain benzene at any level is a financial and healthcare decision that affects the Plaintiff and members of the putative class in a personal and individual way, thus conferring a particularized injury. By failing to disclose the presence of benzene in its Products, Plaintiff and members of the putative class have been denied the opportunity to make those informed decisions. As a result, Plaintiff and members of the putative class have Article III standing.

## CLASS ALLEGATIONS

37. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated individuals within the United States (the "Class" or the "Nationwide Class"), defined as follows:

> All persons or entities in the United States (including its Territories and the District of Columbia) who purchased any Products for personal use or consumption (the "Nationwide Class").

38. Additionally, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated New York Citizens (the "New York Subclass"), defined as follows:

> All persons or entities located in the state of New York that purchased any Products for personal use or consumption (the "New York Sub-Class").

39. Plaintiff reserves the right to revise the Class and Sub-Class (collectively, the "Classes") definitions based on facts learned in the course of litigating this matter.

40. At this time, Plaintiff does not know the exact number of members of the Class or the New York Sub-Class, but given the nature of the claims and the number of online websites and retail stores selling the Products, Plaintiff believes the Class members are so numerous that joinder of all of them is impracticable.

41. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and the New York Sub-Class that predominate over questions that may affect individual members include but are not limited to:

   a. Whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

   b. Whether Defendant's conduct was unfair and/or deceptive;

   c. Whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

   d. Whether Defendant breached an express warranty;

   e. Whether Defendant breached an implied warranty;

   f. Whether Plaintiff and the Class have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages; and

   g. Whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Products that contain benzene, a known human carcinogen.

42. *Typicality.* Rule 23(a)(3) of the Federal Rules of Civil Procedure: Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied each and every Product in Defendant's collection. Plaintiff is advancing the same claims and legal theories on behalf of herself and all putative Class members.

43. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained counsel that are experienced in litigating complex class actions. Neither Plaintiff nor her counsel have any interests that are adverse to those of the Class.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy

through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

45. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

46. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interests of all members of the Class, even though certain members of the Class are not parties to such actions.

47. Defendant's conduct is generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**Violation of the New York General Business Law § 349: Mislabeling**
**(On Behalf of the New York Sub-Class)**

48. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

49. Defendant has engaged, and continues to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in its labels that its Products contain only the ingredients listed in the label, which is untrue, representing that the ingredients in its Products were safe and effective, and failing to make any mention that the certain Products are adulterated with benzene, a known human carcinogen.

50. Defendant has violated, and continues to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of § 349, Plaintiff and the New York Sub-Class Members have suffered damages in an amount to be determined at trial.

51. By reason of the foregoing, Defendant is liable to Plaintiff and New York Sub-Class Members for actual damages or fifty dollars ($50) for each sale of the Products (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

52. Pursuant to New York General Business Law § 349, Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendant from continuing to engage in unfair or deceptive business practices or any other act prohibited by law.

53. Plaintiff and New York Sub-Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

54. The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and New York Sub-Class Members.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT II

### Violation of the New York General Business Law § 350
### (On Behalf of the New York Sub-Class)

55. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

56. New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

57. GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations."

58. Plaintiff and New York Sub-Class Members are consumers who purchased the Products in New York.

59. As sellers of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

60. Defendant's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Defendant's advertising fails to reveal material facts with respect to the Products, as described above, constitute false advertising in violation of the New York General Business Law.

61. Defendant's false advertising was knowing and intentional.

62. Defendant's actions led to direct, foreseeable, and proximate injury to Plaintiff and New York Sub-Class Members.

63. As a consequence of Defendant's deceptive marketing scheme, Plaintiff and New York Sub-Class Members suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, or would have purchased the products on different terms, and as a result of Defendant's conduct, they received a product of less value than what they paid for.

64. By reason of the foregoing, Defendant is liable to Plaintiff and New York Sub-Class Members for actual damages or five hundred dollars ($500) for each sale of the Products (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

65. Plaintiff and New York Sub-Class Members further seek to enjoin the false advertising described above.

66. Absent injunctive relief, Defendant will continue to deceptively market the Products.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT III

### Based on Breach of Express Warranty
### (On Behalf of the Classes)

67. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

68. Plaintiff brings this claim on behalf of herself and the Nationwide Class and the New York Sub-Class.

69. Plaintiff and each Class member purchased Defendant's Products from common retail settings. There was no learned intermediary between the manufacturer and the end-purchaser at the time of purchase and the express warranties were on the Product packaging, labeling, and via direct-to-consumer advertising.

70. Plaintiff and each Class member formed a contract with Defendant at the time Plaintiff and the other Class members purchased Defendant's Products. The terms of the contract include the promises and affirmations and omissions of fact made by Defendant on its Product packaging, labeling, and through marketing and advertising. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract that Defendant entered into with Plaintiff and each Class member.

71. Defendant expressly warranted that its Products were fit for their ordinary use (i.e., as a safe product suitable for human application) to "be used on dry hair without using soap or water."[26] It also expressly warranted that its Products were not adulterated or misbranded, stating that "[w]e source clean, quality ingredients" and "[y]ou can count on us to . . . keep the ingredients clean, and the bar high."[27]

72. Plaintiff and each Class member read and relied on one or more of the express warranties provided by Defendant in the labeling, packaging, and written advertisements in deciding to purchase the Products.

73. Defendant's Products did not conform to Defendant's express representations and warranties because they were not manufactured in compliance applicable standards, were not suitable for human application, and were adulterated and misbranded.

74. At all times relevant all the following States and Territories have codified and adopted the provisions of the Uniform Commercial Code: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1- 2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2- 313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382- A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A2-313; Va. Code § 8.2- 313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313 and Wyo. Stat. § 34.1-2-313.

75. At the time that Defendant marketed and sold its Products, it recognized the purposes for which the products would be used, and expressly warranted the products were suitable for human application and not adulterated or misbranded. These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and each Class member.

---

[26] *See* https://notyourmothers.com/blogs/news/everything-you-need-to-know-about-dry-shampoo (last visited Dec. 9, 2022).

[27] *See* https://notyourmothers.com/pages/about (last visited Dec. 9, 2022).

76. Plaintiff and each Class member are natural persons who are reasonably expected to use, consume, or be affected by the adulterated and/or misbranded Products manufactured and sold by Defendant.

77. Defendant breached its express warranties with respect to its Products because the products were not suitable for human application because they were adulterated with benzene and misbranded.

76. Plaintiff and each Class member would not have purchased the Products had they known the products contained benzene, were not suitable for human application, did not comply with applicable standards, and/or were adulterated and misbranded.

78. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and other Class members have been injured and suffered damages in the amount of the purchase price of their Products, and any consequential damages resulting from the purchases, in that the Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT IV

### Breach of Implied Warranty
### (On Behalf of the Classes)

79. Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

80. Plaintiff brings this claim on behalf of herself and the Nationwide Class and the New York Sub-Class.

81. Defendant was at all relevant times the manufacturer, distributor, warrantor and/or seller of the Products. Defendant knew or had reason to know of the specific use for which its Products were purchased.

82. Because the Products contain benzene, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such Products are used.

83. Plaintiff and members of the Class purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

84. The Products were not altered by Plaintiff or members of the Class.

85. Plaintiff and members of the Class were foreseeable users of the Products.

86. Plaintiff and members of the Class used the Products in the manner intended.

87. As alleged, the Products were not adequately labeled and did not disclose that they contain benzene.

88. The Products did not measure up to the promises stated in the written literature, media advertisement and communications by and from Defendant.

89. Defendant impliedly warranted that the Products were merchantable, fit, and safe for ordinary use. Indeed, Defendant impliedly represented that the Products were free of harmful ingredients, stating that they are "[m]ade with good vibes only" and are "[s]ulfate surfactant free, silicone free, paraben free, [and] phthalate free."[28]

90. Defendant further impliedly warranted that the Products were fit for the particular purposes for which they were intended and sold. At the time Defendant marketed and otherwise placed its Products into the stream of commerce, it knew of the particular purpose for which Plaintiff and the Class members purchased the Products—to have a safe and effective dry shampoo—which did not contain any dangerous carcinogens. Defendant also knew that consumers, including Plaintiff and members of the Class, would have no ability or opportunity to determine the ingredients in the Products, but instead would rely on Defendant's representations that the Products were suitable for their particular purpose and free of dangerous carcinogens (i.e., benzene).

91. Contrary to these implied warranties, the Products were defective, unmerchantable, and unfit for their ordinary use when sold, and unfit for the particular purpose for which they were sold.

92. Further, as the intended consumers and ultimate users of the Products, Plaintiff and the Class members are intended third-party beneficiaries of any contracts between Defendant and any retailers from whom Plaintiff obtained Products, which contain the implied warranty of merchantability and to be fit for ordinary purposes, safe, and not hazardous to one's health. Plaintiff and the Class members, not any retailers, are the parties intended to benefit by any such contract because they are the people using the Products in the manner intended.

93. In breach of the implied warranty of merchantability, the Products that Defendant provided to Plaintiff and the Class members are not fit and suitable for their ordinary purpose because, *inter alia*, they contain a dangerous carcinogen with the potential of causing serious injury and/or death. Defendant's Products supplied to Plaintiff and the Class members did not possess the basic degree of fitness for ordinary use due to the defects described herein. The defects are so basic that they render the Products unfit for their ordinary purposes. As such, they are not merchantable.

---

[28] *See, e.g.,* https://notyourmothers.com/products/clean-freak-unscented-dry-shampoo?_pos=10 &_sid=31f32667b&_ss=r (last visited Dec. 9, 2022).

94. As a direct and proximate result of Defendant's breach, Plaintiff and the Class members have suffered, and will continue to suffer, significant damages, loss and injury in an amount that will be established at trial.

## COUNT V

### Unjust Enrichment
### (On Behalf of the Classes)

95. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

96. Plaintiff brings this claim on behalf of herself and the Nationwide Class and the New York Sub-Class.

97. As a result of Defendant's false, misleading, and deceptive labeling, advertising, marketing, and sales of the Products, Defendant was enriched at the expense of Plaintiff and Class Members through the payment of the purchase price, or for the payment of a price higher than otherwise would have been paid, for the Products.

98. Plaintiff, and members of the Class, purchased mislabeled products that were not what they bargained for and were not safe and effective, as claimed.

100. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and Class Members, in light of the fact that the Products purchased by Plaintiff and Class Members were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other members of the Class for the monies paid to Defendant for the Products.

THEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and the proposed Classes providing such relief as follows:

A. Certification of the Classes proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff as representative of the Classes; and appointment of her undersigned counsel as counsel for the Classes;

B. A declaration that Defendant is financially responsible for notifying members of the Classes of the pendency of this suit;

C. An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Defendant as a result of the unfair, misleading, and unlawful conduct alleged herein;

D. Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

E. For prejudgment interest on all amounts awarded;

F. Injunctive relief pursuant to New York General Business Law § 349 and common law, enjoining Defendant's unlawful and deceptive acts;

G. Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 350;

H. Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

Such further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: December 19, 2022

        GABRIELLI LEVITT LLP

        Michael J. Gabrielli
        Email: michael@gabriellilaw.com
        2426 Eastchester Rd., Ste. 215
        Bronx, New York 10469
        Telephone: (718) 708-5322
        Facsimile: (718) 708-5966

        *Attorneys for Plaintiff and Proposed Class*